IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
RICHLAND DIVISION

| | |
|---|---|
| Mrs. Janell White,<br><br>    Plaintiff,<br><br>    v.<br><br>University of South Carolina, Heather Stewart-Grant, and Michelle Gough,<br><br>    Defendants. | C/A No.:<br><br>COMPLAINT<br>Jury Trial Requested |

## INTRODUCTION

Plaintiff, Mrs. Janell White, by and through her undersigned Counsel, hereby brings the following Causes of Action for Race Discrimination, Racially Hostile Work Environment, and Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, against Defendant University of South Carolina, Defendant Heather Stewart-Grant, and Defendant Michelle Gough, and Breach of Contract against Defendant University of South Carolina, based on the following allegations.

## ADMINISTRATIVE CHARGE

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

    a. Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC") on September 16, 2022.

    b. Plaintiff <u>received</u> a Notice of Right to Sue from the EEOC on January 23, 2025.

Plaintiff has timely filed this action within (90) days from the date on which she received her Notice of Right to Sue.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343, and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured under Title VII of the Civil Rights Act of 1964, as amended, and other Federal statutes. This Court also has pendant, ancillary, and supplementary jurisdiction over so much of this action as it is based on State law.

2. Venue is proper in the Richland Division because the Causes of Action arose therein, the acts and practices complained of occurred there, and it is where the Defendants do business and may be found.

## PARTIES

1. Plaintiff is a State of South Carolina citizen and resides in Richland County.

2. Upon information and belief, University of South Carolina, located in Richland County, South Carolina, is an institution conducting business and operations in the state of South Carolina, having agents, employees, offices, or properties in Richland County, South Carolina, within the Judicial District. At all times relevant to this Complaint, Defendant University of South Carolina acted by and through its agents, servants, employees, and/or officers. Defendant University of South Carolina is legally organized and exists under the Code of Laws of the State of South Carolina.

3. Upon information and belief, Defendant Heather Stewart-Grant is a State of South Carolina citizen, residing in Richland County.

4. Upon information and belief, Defendant Michelle Gough is a State of South Carolina

citizen, residing in Richland County.

## STATEMENT OF FACTS

5. Plaintiff is a thirty-nine-year-old African American female who diligently worked for Defendant University of South Carolina (hereinafter referred to as "Defendant University") for five years beginning April 2017 as a Lab Technician (Phlebotomist). Plaintiff tirelessly performed her job admirably, never receiving any negative evaluations for the years 2017, 2018, 2019, 2020, or 2021.

6. Plaintiff always prided herself on being an exemplary employee and has never received any disciplinary action regarding her performance or interactions with her co-workers, supervisor(s), or previous department heads until January of 2022.

7. Plaintiff asserts that beginning in January of 2022, she began to receive demeaning and defamatory treatment from her supervisor, Defendant Heather Stewart-Grant (WF) (hereinafter referred to as "Defendant Grant"). Specifically, Plaintiff asserts that Defendant Grant began to use demeaning language such as "I don't need lab assistants because you guys don't do your damn job." This demeaning, hostile, and egregious language was projected to Plaintiff in front of her co-workers and was projected to her fellow co-worker, Crystal Brown, another African American female who was also a target of Defendant Grant's demoralizing and demeaning language. Furthermore, Defendant Grant stated on several occasions that she did not like Plaintiff or Ms. Brown and desired not to be their manager.

8. Plaintiff further asserts that the nature of the workplace environment since January of 2022 became unbearably racially hostile and toxic for both Plaintiff and Ms. Brown. In fact, the level of racial hostility towards Ms. Brown escalated to the point that Ms. Brown informed Defendant University that she had retained an attorney and that she could no longer

continue to endure the racially hostile work environment directed towards her at the behest of Defendant Grant.

9. Plaintiff asserts that she reported the racially hostile work environment to her chain of command on February 24, 2022. Specifically, Plaintiff reported her concerns about this matter to the Human Resources Department in her area, which was Defendant Michelle Gough (WF) (hereinafter referred to as "Defendant Gough"), who was Defendant Grant's supervisor.

10. To Plaintiff's shock and dismay, Defendant Gough wholly disregarded Plaintiff's complaints and concerns and refused to investigate the matter reported by Plaintiff and Ms. Brown.

11. Instead, Defendant Gough began a pattern and practice of support for Defendant Grant's actions and deliberately escalated the racially hostile work environment by enabling Defendant Grant's actions.

12. In fact, Plaintiff asserts that Defendant Gough began to write Plaintiff up in retaliation to Plaintiff voicing her concerns and complaints through the internal chain of command beginning February of 2022.

13. Plaintiff asserts that the several write-ups that Defendant Gough conveyed to Plaintiff were for trivial matters that were unsubstantiated and were pretextually devised by Defendants Gough and Grant working in concert to force Plaintiff's resignation or termination.

14. In an effort to remain employed with Defendant University and to maintain a peaceful work environment, Plaintiff followed Defendant University's Handbook policy and went further up her chain of command to the Office of Civil Rights and reported her concerns on February 28, 2022. Subsequently, Plaintiff had a scheduled meeting with the President of

Defendant University to report such issues on March 1, 2025. The Plaintiff also reported such behaviors and concerns, regarding the racially hostile work environment she had endured since January of 2022, to Defendant University's Human Resources Department on March 2, 2022.

15. Thereafter, Plaintiff specifically filed an internal complaint with the Employee Relations Department of Defendant University, an EOP complaint, on April 15, 2022.

16. As a direct result of the egregious racially hostile work environment and retaliation Plaintiff was subjected to, Plaintiff was recommended by her medical provider to take FMLA Leave due to the mental ramifications of such an environment on her mental health.

17. The Plaintiff was subsequently granted FMLA Leave from May 2, 2022, until May 16, 2022, where she reported back to work after clearance from her doctor. Unfortunately, the toxic and hostile work environment remained a continuous and constant pattern for Plaintiff to endure.

18. To Plaintiff's utter shock and dismay, no action was taken against Defendants Gough and Grant for their racially hostile and toxic behaviors towards Plaintiff. This left Plaintiff to be subjected to a racially hostile work environment, leaving Plaintiff with no other alternative than to file an EEOC charge with the Equal Employment Opportunity Commission in September of 2022.

19. On January 5, 2023, Plaintiff met with Defendant Grant for her prescheduled Annual Planning meeting to conduct her annual performance review and finalize her 2024 Planning Stage. During the meeting, Plaintiff became increasingly concerned as to why her evaluations were inaccurate and denied her diligent efforts to perform her job successfully.

20. When Plaintiff questioned Defendant Grant about such accusations on her evaluations, she

was immediately met with hostility and harsh remarks that forced Plaintiff to leave the meeting abruptly to avoid any further confrontation.

21. Defendant Grant then followed Plaintiff and continued to yell demeaning and hostile remarks at Plaintiff through a window near Plaintiff's office, all while in the presence of Plaintiff's other co-workers.

22. Plaintiff, thereafter, attempted to report this situation to Defendant University's Human Resources Department, to include requesting an in-person meeting with the Human Resources Director. Nevertheless, to Plaintiff's dismay, no one ever contacted Plaintiff about such matter or addressed Defendant Grant about her obscene behavior towards Plaintiff.

23. Subsequently, Plaintiff was contacted by Human Resources to meet on January 10, 2023. To Plaintiff's shock and dismay, Plaintiff was instead informed she was being terminated for continued failure to maintain satisfactory and harmonious working relations, which, to Plaintiff's knowledge, was never an issue she created, but was in fact an issue demonstrated by Defendants Grant and Gough throughout Plaintiff's tenure with Defendant University.

24. The Plaintiff inquired as to whether Defendant University's Human Resources Department investigated the matter that occurred on January 5, 2023, but to her dismay, no one had investigated the matter or had even consulted with Plaintiff to discuss the events that had taken place on that day.

25. Plaintiff asserts that her termination was pretextually orchestrated by Defendants Grant and Gough to paint Plaintiff in a defamatory light in front of her fellow co-workers and managerial staff.

26. Plaintiff further asserts that Defendants violated protected rights under Title VII of the

Civil Rights Act of 1964 by condoning continued violations of Race Discrimination, Racially Hostile Work Environment, and Retaliation.

27. Plaintiff firmly asserts that she has been discriminated against on the basis of her Race and has been subjected to a racially hostile work environment against her protected complaints, in violation of Title VII of the Civil Rights Act of 1964, as well as other violations of State and Federal law.

28. Plaintiff maintains her belief that her treatment based on Race, Race discrimination under Title VII of the Civil Rights Act of 1964, and all which led to her ultimate pretextual termination, was racially motivated, and in retaliation for complaints based on her Race and her attempts to comply with violations of Defendant University's Handbook.

## FIRST CAUSE OF ACTION

*Race Discrimination; Hostile Work Environment; Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, against the Defendant University of South Carolina, Defendant Michelle Gough, and Defendant Heather Grant (in their official capacities)*

29. Plaintiff reiterates and fully incorporates each and every assertion set forth above as if repeated herein verbatim.

30. Plaintiff is a member of a protected class on the basis of her Race (African American).

31. Plaintiff alleges Defendant University, through its agents Grant and Gough, initiated discriminatory practices against Plaintiff based upon her Race.

32. Plaintiff was subjected to Race Discrimination and a Racially Hostile Work Environment on the basis of her Race, resulting from racially hostile treatment towards her by

Defendant University and its agents, in violation of Title VII of the Civil Rights Act of 1964, as amended.

33. Defendant University, by and through its agents, began a pattern and practice of targeting Plaintiff through systematic race-based harassment, and disregard of her complaints of racial discrimination.

34. Upon information and belief, Plaintiff's Caucasian colleagues of similar title, responsibility, and authority were not subjected to such treatment, and Defendant University made no efforts to protect Plaintiff from routine and consistent harassment from Defendants Grant and Gough.

35. The Plaintiff alleges that this racially hostile treatment on the job was continuous and occurred on a near-daily basis.

36. Defendant University was well aware of Plaintiff's concerns following multiple verbal/written complaints by Plaintiff. Moreover, Defendant University's policies and procedures, for which Plaintiff relied, provided assurances that Plaintiff's complaints would be addressed. However, Defendant University failed to follow through on those promises in any substantive or meaningful way. In fact, in addition the Defendant University breached its own policies and procedures through its Handbook.

37. Further, Plaintiff alleges that Defendant University, through its agents Defendants Gough and Grant, initiated discriminatory and hostile practices against Plaintiff that were reckless and wanton, including:

    a. Continuing to permit Defendants Gough and Grant's unwelcomed, unwarranted, and consistent racial harassment of Plaintiff;

    b. Failing to provide Plaintiff with explanatory evaluations or any constructive feedback regarding Plaintiff's job performance prior to Plaintiff's protected complaint of policy violations; and

    c. Continuing these racially hostile and egregious practices while Plaintiff's similarly situated Caucasian colleagues were exempt from such treatment.

38. By knowingly allowing such objectively and subjectively pervasive racial hostility to exist, Defendant University effectively created and condoned the same; and Plaintiff's job performance and effectiveness were negatively impacted as a consequence.

39. Further, Defendant University, by and through Defendant Gough, retaliated against Plaintiff for complaining to her chain of command of this racially discriminatory hostility, via its discriminatory and racially adverse treatment of Plaintiff. Moreover, Defendants' retaliatory conduct towards Plaintiff occurred and/or intensified in a close temporal proximity of time to Plaintiff's initial and subsequent complaints.

40. But for Defendant University's conduct, by and through Defendants Gough and Grant, Plaintiff would not have been forced to endure Race Discrimination and a Racially Hostile Work Environment, Retaliation, and ultimate termination.

41. By failing to protect Plaintiff from Defendants Gough and Grant's racially motivated harassment and retaliation, Defendant University acted with malice and reckless indifference to Plaintiff's federally protected rights set out under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, et. seq.), the South Carolina Human Affairs Law, and the United States Equal Employment Opportunity Laws.

42. As a result of Defendants' racially discriminatory conduct, accompanied by Plaintiff's continuous and ongoing exposure to the same, Plaintiff has suffered damages in the form

of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff further believes she should be awarded actual damages and punitive damages against Defendants due to their unlawful discriminatory treatment of Plaintiff under Title VII.

## SECOND CAUSE OF ACTION

*Breach of Contract as to Defendant University of South Carolina*

43. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

44. Upon information and belief, Defendant University maintains a Handbook of policies and procedures, including, but not limited to, Standards of Conduct, Open Door/Conflict Resolution Process regarding conduct in the workplace, anti-discrimination, harassment, investigation, and/or other policies and procedures which applied to Plaintiff.

45. Plaintiff relied on Defendant University's reassurances that it would act pursuant to both its expressed and implied policies and procedures concerning conduct in the workplace, anti-discrimination, investigation of reported violations, harassment, and other workplace policies and procedures.

46. Plaintiff performed her job duties in an exemplary manner and with due diligence at all times.

47. However, Defendant University, through its agents, unjustifiably failed to perform its contractual duties by racially discriminating against and racially harassing Plaintiff, failing to protect Plaintiff from the retaliatory actions of its agents, and ultimately retaliating against Plaintiff due to her protected complaints as stated more fully above.

48. Defendant University also failed to fully and completely investigate Plaintiff's protected complaints in accordance with its own policies regarding standards, despite Plaintiff's multiple reports of compliance violations of the same.

49. All of these actions breach the contractual anti-discrimination provisions within Defendant University's Employment Handbook (contract), its anti-discrimination and anti-harassment policies, workplace conduct policy, and other contractual policies and procedures.

50. Further, Defendant University breached its contractual policies and procedures by failing to treat Plaintiff equally to its Caucasian employees as stated more fully above.

51. Defendant University, and its agents, had a responsibility to ensure that Plaintiff would not be subjected to Race Discrimination.

52. Instead, Defendant University permitted its agents to not only racially discriminate against Plaintiff, but also allowed them to retaliate against Plaintiff when she properly submitted complaints through its chain of command, as instructed in its own written policies and procedures. Moreover, Defendant University then failed to treat Plaintiff similarly to her Caucasian counterparts under like scenarios, all in violation of the contractual guarantees provided to Plaintiff by Defendant University in its Employment Handbook and other contractual documents.

53. Defendant University's conduct, by and through its agents, was done both in bad faith and in violation of the implied covenant of good faith and fair dealings that is implied in every employment contract.

54. As a result of Defendant University's breach of contract, Plaintiff has suffered actual, compensatory, physical, mental, emotional, and consequential damages stemming from the breach and other such damages as are allowable by law.

## JURY TRIAL REQUESTED

1. Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

2. **WHEREFORE**, Plaintiff prays that this Honorable Court declares that Defendant University, Defendant Grant, and Defendant Gough's actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

    a. Declaring the actions complained of herein illegal;

    b. In favor of Plaintiff and against the Individual Defendants for all causes of action herein alleged in an amount which is fair, just, and reasonable, and for actual, compensatory, special, and punitive damages;

    c. In favor of Plaintiff and against the Defendants for all causes of action in an amount which is fair, just and reasonable;

    d. Issuing an injunction enjoining Defendants, their Agents, Employees, Successors, Attorneys and those acting in concert or participation with Defendants, and at their direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of Title VII of the Civil Rights Act of 1964, as amended (Race Discrimination/ Racially Hostile Work Environment/ Retaliation), Breach of Contract and the common laws of the State of South Carolina;

    e. Awarding Plaintiff actual and compensatory damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of Defendants' unlawful discriminatory actions taken as a result of Plaintiff's Race

and other pled causes of action, including: physical and mental anguish, pain and suffering, harm to Plaintiff's economic opportunities (present and future), any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits and retirement benefits;

f. Awarding Plaintiff her costs and expenses in this action, including reasonable Attorney's fees, and other litigation expenses; and

g. Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

Respectfully Submitted,

_____s/Donald Gist_____
Donald Gist (13098)
***GIST LAW FIRM, P.A.***
4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

***Attorney for Plaintiff***

April 23, 2025